# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **BAI EXCAVATING, LLC** : <br> 11 Industrial Boulevard, Suite B : <br> New Castle, Delaware 19720 : <br> : <br> and : <br> : <br> **BATTAGLIA ASSOCIATES, INC.** : <br> 11 Industrial Boulevard, Suite B : <br> New Castle, Delaware 19720 : <br> : <br> Plaintiffs : <br> : <br> v. : <br> : <br> **KIMBALL CONSTRUCTION** : <br> **CO., INC.** : <br> 9615 Philadelphia Road : <br> Baltimore, Maryland 21237 : <br> : <br> Defendant : | No. _____ |

## COMPLAINT

Plaintiffs, BAI Excavating, LLC, and Battaglia Associates, Inc., by and through their attorneys, Cohen Seglias Pallas Greenhall & Furman, P.C., files this Complaint against Defendant, Kimball Construction Co., Inc., and avers as follows.

## Parties

1.  Plaintiff, BAI Excavating, LLC, is a Delaware limited liability company, with its principal place of business located at 11 Industrial Boulevard, Suite B, New Castle, Delaware 19720.

2. BAI Excavating, LLC's sole member is Battaglia Associates, Inc., a Delaware corporation, with its principal place of business located at 11 Industrial Boulevard, New Castle, Delaware 19720.

3. Plaintiff, Battaglia Associates, Inc. is a Delaware corporation, with its principal place of business located at 11 Industrial Boulevard, Suite B, New Castle, Delaware 19720.

4. Defendant, Kimball Construction Co., Inc. ("Kimball"), is a Maryland corporation, with its principal place of business located at 9615 Philadelphia Road, Baltimore, Maryland 21237.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a), (c)(1), because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over BAI Excavating, LLC, and Battaglia Associates, Inc., because they regularly conduct business in Delaware, and because this action arises from transactions and occurrences within the state of Delaware.

7. This Court has personal jurisdiction over Kimball because the claims arose in Delaware, and because Kimball purposefully availed itself of doing business in the State of Delaware.

8. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated in Delaware.

**Factual Background**

9.      Kimball and the State of Delaware are parties to a contract whereby Kimball agreed to construct a new GSS Food Service Warehouse located at 5408 DuPont Parkway, Smyrna, Delaware 19927 (the "Project").[1]

10.     Kimball and BAI Excavating, LLC, are parties to a Subcontract Agreement dated December 22, 2023, whereby BAI agreed to perform, among other things, certain concrete work at the Project (the "Subcontract").  A true and correct copy of a portion the Subcontract, the entire Subcontract being too voluminous to attach hereto but is in the possession of Kimball, is attached hereto and incorporated herein as **Exhibit 1**.

11.     On March 6, 2024, Kimball changed the name on the cover page of the Subcontract to Battaglia Associates, Inc., because of an error, but did not change the signature page.  A true and correct copy of the relevant emails and the changed cover page to the Subcontract is attached hereto and incorporated herein as **Exhibit 2**.

12.     Because the signature page of the Subcontract was not changed, BAI Excavating, LLC, and Battaglia Associates, Inc., bring this lawsuit as co-plaintiffs and are collectively referred to as "BAI."

**Steel Anchor Bolt Tolerances**

13.     The Subcontract's Specifications incorporated "ACI 117 – Specification for Tolerances for Concrete Construction and Materials."  A true and correct copy of Specification Section 03 30 00, Cast-In-Place Concrete, is attached hereto and incorporated herein as **Exhibit 3**.

---

[1] BAI believes that the correct Zip Code is 19977.

3

14. The Subcontract's Specifications incorporated "AISC 360– Specification for Structural Steel Buildings." A true and correct copy of Specification Section 13 34 19, Metal Building Systems, is attached hereto and incorporated herein as **Exhibit 4**.

15. ACI 117 and AISC 360 (with Code of Standard Practice) provide, in relevant part, that the tolerances for the steel anchor bolts by which a structural steel building frame is anchored to the concrete piers ranges from +/- 3/8" to +/- 1/2" for bolts from 1" in diameter to 2-1/2" in diameter, which were utilized on the Project. True and correct copies of the relevant pages of ACI 117 and AISC 360 (with Code of Standard Practice) are attached hereto and incorporated herein as **Exhibit 5** and **Exhibit 6**, respectively.

16. On November 1, 2024, almost eleven months after the date of the Subcontract, Kimball sent to BAI the shop drawings from the steel building manufacturer, Varco Pruden, that were sealed by a licensed professional engineer on October 18, 2024. The sealed shop drawings state, in Note 4, that the tolerance for the steel anchor bolts was +/- 1/8": "Centers of any two AR's [Anchor Rods] within a Column Base Group; +/- 1/8"." A true and correct copy of Note 4 is attached hereto and incorporated herein as **Exhibit 7**.

17. Contrary to, and in material breach of, the Subcontract's steel anchor bolt tolerances of +/- 3/8" to +/- 1/2", the shop drawings for the steel anchor bolt tolerances imposed a significantly more stringent tolerance of +/- 1/8".

### Kimball's Failure to Maintain the Control Lines

18. Among other things, the parties clarified "layout" in the Subcontract to mean "Kimball to give control lines," and "layout from control points." See **Exhibit 1**, Subcontract, Paragraphs 3.2 and 4.7.

19. According to the Subcontract, Kimball was responsible for setting the control lines for the structure, and Kimball knew that BAI would use and rely upon the control lines for its work.

20. Kimball caused control lines to be set at the Project and determined the manner and placement of all control lines.

21. During the course of BAI's work, Kimball's control lines—approximately twenty-four (24) hubs consisting of six inch (6") wooden stakes driven into the ground—for the locations of the concrete piers and steel anchor bolt locations moved due to weather conditions, and despite BAI's notice, Kimball failed to correct the control lines. As a result, BAI's ability to accurately locate the concrete piers and the steel anchor bolts inserted into those concrete piers was significantly compromised.

22. Following BAI's installation of the concrete piers and steel anchor bolts, Kimball complained that the locations of the concrete piers and the steel anchor bolts were incorrect. Kimball demanded that BAI demolish seventeen (17) concrete piers and their steel anchor bolts, and then repour the concrete piers and replace all of the steel anchors. BAI performed the work under protest and with a reservation of its rights.

23. After BAI demolished the seventeen (17) concrete piers and their steel anchor bolts, and while BAI was locating the new concrete piers and steel anchor bolts, Kimball approved the new locations of the concrete piers and steel anchor bolts, and, in fact, moved numerous steel anchor bolts.

24. When BAI completed the work of replacing the seventeen (17) concrete piers and their steel anchor bolts, Kimball complained again that the locations of the concrete piers and the steel anchor bolts were incorrect.

25. By and through six (6) Change Order Requests, BAI demanded payment of $270,059.22 for the costs and time associated with removing and replacing the seventeen (17) concrete piers and their steel anchor bolts. The Change Order Requests are identified as follows:

    A. COR 90-015.1 ($30,945.59). A true and correct copy of COR 90-015.1 is attached hereto and incorporated herein as **Exhibit 8**.

    B. COR 90015.1 ($43,550.18). A true and correct copy of COR 90015.1 is attached hereto and incorporated herein as **Exhibit 9**.

    C. COR 90016 ($56,880.29). A true and correct copy of COR 90016 is attached hereto and incorporated herein as **Exhibit 10**.

    D. COR 90017 ($34,453.30). A true and correct copy of COR 90017 is attached hereto and incorporated herein as **Exhibit 11**.

    E. COR 90018 ($25,827.75). A true and correct copy of COR 90018 is attached hereto and incorporated herein as **Exhibit 12**.

    F. COR 90019 ($78,402.11). A true and correct copy of COR 90019 is attached hereto and incorporated herein as **Exhibit 13**.

26. By letter dated July 22, 2025, Kimball wrongfully denied payment of $270,059.22 for BAI's Change Order Requests to remove and replace the seventeen (17) concrete piers and their steel anchor bolts, and an extension of time to perform the work.

27. Despite demand, Kimball has also wrongfully withheld $732,017.01 from BAI for work that it performed on the Project, identified as follows:

    A. Payment Application 6 (March 2025): $362,570.74. A true and correct copy of Payment Application 6 is attached hereto and incorporated herein as **Exhibit 14**.

    B. Payment Application 9 (August 2025): $267,470.19. A true and correct copy of Payment Application 9 is attached hereto and incorporated herein as **Exhibit 15**.

    C. Payment Application 10 (September 2025): $7,584.50. A true and correct copy of Payment Application 10 is attached hereto and incorporated herein as **Exhibit 16**.

        D.        Retainage in the amount of $94,391.58.

28.        Kimball is obligated to make payment to BAI for the $270,059.22 to remove and replace the seventeen (17) concrete piers and their steel anchor bolts; to make payment for the $732,017.01 that it has wrongfully withheld from BAI for work that it performed on the Project; and to grant to BAI an extension of time for Kimball's impacts, delays, and inefficiencies that it caused to BAI's work.

## Count I: Breach of Contract

29.        BAI incorporates the foregoing paragraphs.

30.        The Subcontract required Kimball to set the control points from which BAI would locate and install the concrete piers and steel anchor bolts.

31.        In material breach of the Subcontract, Kimball failed to accurately set and maintain the control points.

32.        The Subcontract provided that the tolerance for the steel anchor bolts would be +/- 3/8" to +/- 1/2" for bolts from 1" in diameter to 2-1/2" in diameter.

33.        In material breach of the Subcontract, the Varco Pruden sealed shop drawings state, in Note 4, that the tolerance for the steel anchor bolts was +/- 1/8".

34.        Kimball wrongfully demanded that BAI correct Kimball's mistakes caused by failing to set and maintain the control points, and by demanding that BAI meet tolerances for the steel anchor bolts that were contrary to the Subcontract's requirements, at a cost of $270,059.22 to BAI, not including impacts, delays, and inefficiencies caused by Kimball.

35.        Kimball has wrongfully withheld $732,017.01 from BAI for work that it performed on the Project for Payment Application 6 (March 2025): $362,570.74; Payment Application 9

(August 2025): $267,470.19; Payment Application 10 (September 2025): $7,584.50; and Retainage: $94,391.58.

36. Despite demand, and as a result of Kimball's material breaches, BAI has incurred damages in the principal amount of $1,002,076.23, as well as additional damages and time for the impacts, delays, and inefficiencies caused by Kimball.

37. All conditions precedent have been performed or have occurred.

WHEREFORE, Plaintiffs, BAI Excavating, LLC, and Battaglia Associates, Inc., demand judgment in their favor and against Defendant, Kimball Construction Co., Inc., in an amount in excess of $1,002,076.23, plus additional time for impacts, delays, and inefficiencies, as well as interest, costs of suit, and all such other and further relief as the Court deems just and appropriate.

## Count II: Quantum Meruit

In the alternative to Count I, Breach of Contract, BAI avers as follows.

38. BAI incorporates the foregoing paragraphs.

39. At Kimball's request, BAI supplied and installed concrete, including concrete piers and steel anchor rods, at the Project, and BAI expected to be compensated for the value of the concrete, including the concrete piers and steel anchor rods at the Project.

40. Kimball knew or should have known that BAI expected to be compensated for the value of the concrete, including the concrete piers and steel anchor rods at the Project.

41. Despite demand, Kimball has failed and refused to make payment to BAI in the principal amount of $1,002,076.23, plus additional damages and time for the impacts, delays, and inefficiencies caused by Kimball.

42. It would be inequitable and unjust for Kimball to retain the benefit that BAI conferred upon Kimball without payment for the same.

43.     BAI has incurred damages in the principal amount of $1,002,076.23, as well as additional damages and time for the impacts, delays, and inefficiencies caused by Kimball.

WHEREFORE, Plaintiffs, BAI Excavating, LLC, and Battaglia Associates, Inc., demand judgment in their favor and against Defendant, Kimball Construction Co., Inc., in an amount in excess of $1,002,076.23, plus additional time for impacts, delays, and inefficiencies, as well as interest, costs of suit, and all such other and further relief as the Court deems just and appropriate.

### Count III: Violation of Payment Acts

44.     BAI incorporates the foregoing paragraphs.

45.     Del. Code Ann. tit. 29, § 6516 (f)(7) states, in part:

The contractor shall pay the contractor's subcontractors . . . within 21 days of receipt of each progress payment, unless otherwise agreed to in writing by the parties, the respective amounts allowed the . . . subcontractor . . . on account of the work performed . . . except that no contract for public works may materially alter the rights of any contractor, subcontractor, subordinate subcontractor or material supplier to receive prompt and timely payment as provided under this subsection . . . .

Id.

46.     Del. Code Ann. tit. 29, § 6516 (f)(8) states, in part:

In any action . . . brought to collect payments or interest under this subsection, the . . . court shall award damages equal to the amount that is determined by the . . . court to have been wrongfully withheld.  An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any disputed amount or claim held in good faith by the agency contractor . . . against whom the . . . subcontractor . . . is seeking to recover payment.

Id.

47.     MD. Code Ann., Right to Prompt Payments, § 9-302 (b)(3) states "the contractor or subcontractor shall pay undisputed amounts owed to its subcontractors within 7 days after receipt by the contractor or subcontractor of each payment received for its subcontractors' work or materials." Id.

48. MD. Code Ann., Remedies for Payment Violations, § 9-303 (b) states:

    (b)    In addition to any other remedy provided under any other provision of law, a court of competent jurisdiction, for good cause shown may:

        (1)    Award any equitable relief for prompt payment of undisputed amounts that it considers necessary, including the enjoining of further violations; and

        (2)    In any action, award to the prevailing party:

            (i)    interest from the date the court determines that the amount owed was due; and

            (ii)    Any reasonable costs incurred.

    (c)    If a court determines that an owner, contractor, or subcontractor has acted in bad faith by failing to pay any undisputed amounts owed as required under § 9-302 of this subtitle, the court may award to the prevailing party reasonable attorney's fees.

Id., § 9-303(b), (c).

49. Kimball has failed and refused, in bad faith, to make payment to BAI for the $270,059.22 to remove and replace the seventeen (17) concrete piers and their steel anchor bolts; to make payment for the $732,017.01 that it has wrongfully withheld from BAI for work that it performed on the Project; and to make payment to BAI for Kimball's impacts, delays, and inefficiencies that it caused to BAI's work.

WHEREFORE, Plaintiffs, BAI Excavating, LLC, and Battaglia Associates, Inc., demand judgment in their favor and against Defendant, Kimball Construction Co., Inc., in an amount in excess of $1,002,076.23, plus additional time for impacts, delays, and inefficiencies, interest, costs of suit, relief pursuant to Delaware and/or Maryland's payment acts, and all such other and further relief as the Court deems just and appropriate.

                                  Respectfully submitted,

                                  **COHEN SEGLIAS PALLAS**
                                  **GREENHALL & FURMAN, P.C.**

Dated: 10/15/25                    By: _____
                                  Francis D. Nardo, Esq.
                                  fnardo@cohenseglias.com
                                  500 Delaware Avenue, Suite 730
                                  Wilmington, DE 19801
                                  P: 302.425.5089
                                  F: 302.425.5097
                                  (*Attorneys for Plaintiffs, BAI Excavating, LLC, and Battaglia Associates, Inc.*)